The pivotal issue in this case is whether or not the District Court improperly or wrongfully refused to remand the case. There are some basic rules that apparently were not followed. Number one, I want to set this straight. This is not a case where in the state pleading there was any omission or whether or not there was a mistake that would relate to the jurisdictional issues. So, consequently, there is basically no reason for an independent inquiry. Secondly, if there were an independent inquiry, as Ackerblom or as earlier hinted at or discussed in Mumphrey were to have been appropriate, the independent inquiry would not have been to ask the defendant for their facts, but to have had the plaintiff explicate his position. Now, in this particular case, the pleading that was filed in state court was ample to state a cause of action. The defendants state that, well, and misstate some facts, but the defendants state, well, there is no way that plaintiff could have proven a case against Montemayor. The defendants say that they approved and ratified Montemayor's action. Well, first of all, Montemayor was not an agent. There is no pleading that she was an agent of BVEC's. There is a pleading that she was a co-employee and that she influenced the decision. So the fact that when they say that I pled that she was an agent, that's not true. And consequently, since— When you say she's a co-employee— Co-employee. A fellow employee is the exact phrase that I use. And you plead that the plaintiff was an employee of the defendant? Yes. Why not a natural inference that the co-employee is an agent of the employer? Well, I think—excuse me, Your Honor, I took one of these off because I thought I would hear better without it. Okay. I think I heard the court say why— If you allege that the plaintiff is an employee of the defendant and that— The plaintiff was an employee and Montemayor was an employee, or a fellow employee is what I called her in the pleading. Okay. So that's not a natural inference that the co-employee was an agent of the employer? I don't think so because you can be an employee and not be an agent. An agent requires, I think, authority and it requires the ability to make representations. She didn't have the authority to make a decision to terminate my client. She didn't have—and I never said she did. She didn't have the authority to make a final act or even to make a recommendation, and I didn't say she did. I said she influenced. But all of those things go to the sufficiency of the pleadings and go to the defenses. And the courts have been—this court has been clear that that's the stuff for state courts to decide. So when we get into the pleadings, what you have to do—and this is a de novo— what you have to do is to make a 12B6 analysis of the pleadings without implying the— under current majority case law—without implying the higher pleading standards required by Twombly or IGBAL. So what we do is we go by state pleading standards and under a 12B6, and the state pleading standards are fair notice. What do you say to the argument that when Texas adopted Civil Rule 91A, they in effect adopted the same rule as the IGBAL-Tombly? I don't think there is a—I don't think Texas courts are decided what 91A says or what it means. You've got some intermediate appellate courts. I don't—there's only one court of appeals that I know of in Texas that has talked about that, and that's the Ninth Court of Appeals out of Beaumont. I don't think we know what 91A means. I think that what it does mean is that there is supposed to be a 12B6 analysis, but that doesn't necessarily incorporate IGBAL and Twombly. I mean, before IGBAL and Twombly, 12B6 had done very well.  Judge Miller should have taken all of the pleading, all of the facts that were in the pleadings, all of the inferences, and construed them in favor of the plaintiff. Now he didn't do that. And by the way, I pleaded the jurors—a motion to remand, a jurisdictional dispute. I raised that at the beginning of the case in a Rule 26 conference. But it can never be waived. Jurisdiction can never be assumed or agreed upon. And it can be raised at any time. Now, I'm faulted for having waited a while, and I explained myself to Judge Miller in the hearing. The point is, though, he had an obligation to construe everything from the plaintiff's perspective. He didn't. He tells you. He made the decision based upon their summary judgment evidence. He made the decision not based upon a plaintiff's explication of facts, but by their addition to the facts. He made his decision not on the basis of the plaintiff's pleading, but upon the basis of what the defendant said the plaintiff's pleading said. Now, when you get to all of that, the end of the day, I think, is that the case should be remanded. I think it was an unauthorized expansion of federal jurisdiction. And I understand that there are a lot of views that may ebb and flow on the issues of employment cases, but the point is that jurisdiction is set by some very narrow rules, and the narrowest of those rules is to be determined by the pleadings at the time of the removal. It's not to be determined by something that the defendant adds or some argument they make. Well, counsel, 91A, whatever level of interpretation has been applied so far in Texas courts, we have the question here of whether state pleading requirements apply or federal pleading requirements. For purposes of my question, I will assume that state pleading requirements apply to this case. 91A says that dismissal would be allowed if the pleadings do not entitle the claimant to relief. So Judge Miller looks at this complaint and determines, is there any way to have a claim against Montemayor, if that's her name, that is not under Texas law really a claim against the company? That goes to the merits, first of all. It goes to the merits. 91A has the language about does it show the claimant is entitled to relief. So how can you not at least say on the basis of pleadings, not on the basis of evidence, but on the basis of pleadings, has there been a claim that could succeed made against Montemayor? Excuse me for interrupting you so much. Yes, Your Honor. Judge Southwick, the point that I think that maybe Judge Miller, of course Judge Miller doesn't say he relied on 91A, but 91A is a sufficiency of the pleadings argument that I think is best left at state law, best left for state courts. Now, whether or not those pleadings stated a cause of action that would have survived 91A, I've seen innumerable cases, innumerable cases in recent days where the state courts conclude that fair notice pleading, where you state a cause of action, regardless of whether you're going to win or not, meets the burdens of 91A. 91A simply says that you can't come in and, like in 12B6, present a cause of action or claim for relief that doesn't exist. We have a claim for relief that does exist. When counsel said that we didn't plead that it was in Montemayor's sole best interest and against Bevex's interest, we did plead it was against Bevex's interest, and we did plead in the introduction, paragraph 4, I think, of the pleading that Montemayor acted for her own interest maliciously to take certain action. And it was the facts that we did lay out were that she hired people in a very crucial job, contrary to past policies and practices, who couldn't speak English. I mean, transporting gazillions of dollars around, who had no basis for, they couldn't be tracked down. And we cite that in the pleading. And that's clearly contrary. Now, counsel says, but we ratified it. That's a defense. That goes to the state court. But I don't believe that they did ratify it. I think that two weeks or more after the fact, they did come up with a, well, you know, it's legally practical. My grandfather used to say that about a cousin of ours. He married for all the practical reasons. I think that they wed themselves to Montemayor's decision after the fact for all the practical reasons. One of the things you have to look for and you have to be leery of is improper joinder of parties. I totally understand that. You don't want to have fraudulent joinder and you don't want to have improper joinder. But one of the things that I think that if we're not careful, that we're going to see an invitation, by abusing Judge Miller's rule of expanding readings of the merits of the claim and applying Texas law, we're going to see an invitation to defendants to make the facts up as they go along to suit their purposes. Federal courts have a special interest in removal to make sure that individuals are not improperly joined and there's a substantial amount of case law, innuable cases, whatever the word was you used earlier on your review, that says we do have to look, district judges, carefully at whether there actually is a claim against the non-diverse party. And that seems to me what Judge Miller did. Now, he may have done it incorrectly. No. But that is his job. The jury issue on a tortious interference, the jury issue, which is set out in lots of Texas cases in the pattern jury charge, is whether, as I recall, the new pattern jury charge, it is whether or not the third party employee, I mean the agent, the corporate agent, the corporate employee, acted in good faith, whether they acted with a subjective belief that it was in the interest of the master. You can't serve two masters. We know that. Scriptures tell us that. But the point is that when you get to this case, there was no clear reason to believe that I couldn't prove my claims that she acted as an employee to influence a decision to fire my guy so she could bring in people of her own ilk and of her own choice who placed the corporation and its interest at risk. And one of the things that has always concerned me, we sometimes forget. I'm sure that all of us have some relationship to corporations in some way. And we sometimes forget that the real interest is the shareholder's interest. And it's not the interest of the lawyers and it's not the interest of subordinate employees. And it's not necessarily the interest of those people in high places in the corporation. In this particular case, we have a clear statement in the state's pleadings that this lady did not follow the rules, that she employed people who placed the corporate interest at risk, and that she did it mainly because she didn't like black, heterosexual males. My guy had done very, very, very well for the predecessors and the interests of Bevex. The only reason he was there was because of his strong contacts with Bank of America and with Chase. That's why he was there. That's why he stayed there. And when he became a threat to her hiring her lover or hiring people that did not speak English or who didn't give their residences or their home phone numbers or any of the reliable contact information, she influenced subtly, perhaps like Pilate's wife. Didn't you also plead that your client was having trouble with late drivers and he improperly dispatched other drivers prematurely? What I pled was that he had no problems up until Montemayor's coming on board. And by the way, I never say that Montemayor was his supervisor or manager. What I say in there is that when the supervisor and manager of that Houston terminal, if I'm not answering the question, please let me know, but what I do say is that when I think it was Deaconnip came in, that he didn't know anything about it. So Montemayor, she assumed a position, a responsibility, and he depended upon her, but that was she assumed the power of influence. My guy, he did a great job up until Montemayor saw that their purposes were at odds. Thank you very much. Thank you, Mr. Watts. You have some time left for rebuttal. Mr. Miguez. Your Honor. Judge Davis, Judge Southwick, may it please the Court, Counsel. One thing to clarify right out of the gate, Mr. Watts just mentioned during his statement up here that he didn't plead that Ms. Montemayor was an agent of BVACs and didn't claim that Ms. Montemayor terminated Mr. Denson. I would point, Your Honors, to I believe it's page six of Mr. Denson's pleadings where he says, for this occurrence, without justifiable cause and without being placed on probation, Densonly was suddenly terminated by Montemayor. So he does allege that Ms. Montemayor terminated his employment. He alleges that Ms. Montemayor hired employees, that she disciplined employees, that she engaged in all these other actions that I think we can clearly attribute to the actions of an agent. The issues before the Court today, as I think Your Honors have figured out, are relatively straightforward. There are two of them. One, did Judge Miller err when he denied plaintiff's motion for remand and when he ruled that Ms. Montemayor had been improperly joined? And then two, did the District Court abuse its discretion when it denied plaintiff's motion for leave to amend his pleadings? And in both of those cases, Judge Miller got it right. The answer is no to both of those. Let me explain why. The Court set out the definitive standard for determining improper joinder in the Smallwood v. Illinois Central Railroad case. And under the Smallwood standard, District Courts must determine whether the defendant has demonstrated there is, quote, no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the District Court to predict the plaintiff might be able to recover against an in-state defendant. And it doesn't have to be absolutely no possibility of recovery. I believe, Judge Davis, you pointed that out in Travis v. Irby, that it's not absolutely no basis, but that there's no reasonable basis. And the Court made clear in Smallwood that what that means is that the possibility of recovery can't be purely theoretical. Okay? It can't be a Hail Mary pass. It can't be a three-quarter point shot at the buzzer. The plaintiff has to show at least some plausible chance at recovery against this individual non-diverse defendant. And Mr. Denson's pleadings in this case were a contest. As we've heard, Mr. Denson pled one cause of action only against Ms. Montemayor, and that was for tortious interference with his contract, with his employment relationship with BBEX. Ms. Montemayor was the Houston operations manager for BBEX. She was an agent of BBEX. I don't think that's seriously in dispute. And that agency is a key point because the Texas Supreme Court in Holloway v. Skinner and in Powell Industries v. Allen has said that in order to plead a valid claim of tortious interference, the plaintiff has to plead and show the occurrence of an act of interference that was willful and intentional. Now, Ms. Montemayor, as we've established, was an agent of the company, and the Texas Supreme Court has told us that the agent of a principal or the agent of a contracting party typically cannot interfere in the contracts of that party because the agent's actions are generally considered to be the actions of the party, and as we all know, a party can't interfere with its own contract. So there's a narrow exception to that rule, and that's what Holloway v. Skinner, that's what Powell Industries v. Allen talk about. In order to recover for tortious interference against an agent of a contracting party, the plaintiff has to plead and show that the agent behaved in a way that was so contrary to the corporation's best interests that her actions could only have been motivated by personal interests. Are you saying that under Texas Pleading Standards 91A, if that's what applies, that these allegations must be that specific as opposed to the reverse, that defense must show there's no possibility of recovery? It seems to me that you're in part, not entirely, arguing that the allegations are not sufficiently specific under what is necessary under your understanding of how to make Montemayor liable. I would actually argue, Your Honor, almost to the contrary, not that the plaintiffs were not specific enough and not that they were too specific, but they were fairly specific, I mean reasonably specific, about exactly what Montemayor's role was. As I said, this is somebody who Mr. Denson affirmatively pleads was somebody who, her malfeasance or misconduct that he complains of, that he considers to be the tortious interference, was she was hiring friends and lovers. She was favoring Hispanic, female, homosexual employees and drivers over African-American, male, heterosexual ones. So these are all actions that are really, they're managerial in scope. They go right to the course and scope of what her job was as a manager. So I'm not saying that she wasn't specific enough. I'm not saying she should have been more specific. I'm effectively saying, and what we're effectively arguing, is that she pleaded herself right out of a claim. Well, let me repeat something in your brief, and you show me how that fits into what you just said. Among your arguments is that it must be alleged that Montemayor acted in a fashion so contrary to Bevex's best interests that her actions could only have been motivated by personal interests. That fails because it shows she was acting in her capacity as a manager for Bevex. It seems to me, looking at this again from the negative, is there no possibility of recovery under these allegations? There may be better ways to put this that would touch more of the basis, but I don't see that that particular argument forecloses what is necessary to be proven. That particular allegation forecloses what is necessary to be proven. That it could have been, could be shown, that she was only motivated by her personal interests under that allegation. In other words, the allegations that she was behaving in a managerial capacity. Make sure I understand your question. Well, plaintiff has alleged what the motivations were for Montemayor. It shows what her position was in the company. It seems to me the allegation may be sufficient that she was working at cross-purposes to the best interest, or could be proven that she was acting in cross-purposes to the best interest of the company. And the allegations don't, the allegations of the complaint don't write that out of what might be proven. Well, Your Honor, I think that what the pleadings show is that these actions that she was engaged in, using your phrasing, cross-purposes. So I think we could all agree there are many times that an agent in the course and scope of her employment might do something that's at cross-purposes with the company. I'll take an example right out of today's headlines if you're sports fans. The Texas Rangers just traded for Josh Hamilton. If you listen to Dallas sports news and read the Dallas Morning News like I do, there are people that are up in arms screaming that this is going to ruin the team, it's going to destroy clubhouse chemistry. But I don't think anybody would claim that the general manager wasn't acting within his capacity as a leader, within his capacity as an agent of the team to do that. I don't think anybody would argue that whoever Josh Hamilton replaces in left field has a tortious interference claim against the general manager. The general manager is doing his job. And we can take Powell Industries or take Holloway as an example. In Powell Industries, the CEO, the CFO of the company, who is the plaintiff in that case, complained to the board of directors that the CEO had asked him to use company funds to pay for personal accounting. That's the sort of thing that seems to fail the smell test. The board of directors didn't find that it was the case, and they told the CEO to do what he needed to do with the CFO, which the CEO interpreted to mean fire him. The CFO turns around and sues him for tortious interference. Clearly what that smells like, what that seems like on a common sense basis, is the CEO is trying to shut up the CFO, and maybe so. But the CEO was acting within the scope in the course of his employment. He was behaving as a manager. Take the contrast of that. How could you plead that somebody was doing managerial duties and yet be still able to plead a tortious interference claim? Let's say that in Ms. Montemayor's case, going back to the facts of this case, let's say that what Mr. Denson had alleged, and he didn't have to allege it in detail, was that while Ms. Montemayor was doing these things, hiring these employees, that sort of thing, she was doing it to try to set up a competing business. In other words, she wasn't doing these hiring decisions, firing decisions, things like that, in order to assist BVECs in any way, no matter how wrongheaded he might allege that they might have been. Let's say that he alleged that she was engaging in these ostensibly managerial capacities in order to further her own interests. I think we could agree that setting up a competing interest is not in the company's best interest. That would be solely in her interest. Or if she were doing these things, putting her friends in places so she could embezzle money, so she could take some of these pharmaceutical drugs that she was delivering from place to place and sell them on the streets, and she didn't want somebody like Denson in place that knew about that and could complain to the company, complain to the authorities. Those would be technically managerial-type actions, right? But they would be clearly things, actions that were taken clearly solely in her own self-interest and so contrary to the company's interests that no reasonable person under any standard, whether Texas or federal, could look at that pleading and say, well, there's some interest for the company in her embezzlement. There clearly isn't. There's some interest for the company in her setting up a competing company. There isn't. What if the plaintiff could prove, though, that by hiring friends that that was totally inconsistent? I mean, if the friends were incompetent, if they couldn't do the job, and she hired them strictly because they were friends and had the sexual preferences that she desired, wouldn't that be proof that would satisfy the plaintiff's claim? I don't think so, Your Honor. I mean, because even in that situation, she's still doing these things. She's hiring people to do work for the company. She's setting up what she believes is the best in her mind, not necessarily Mr. Denson's or anybody else's, but what in her mind would be the best iteration of the company, the best way for the company to work, right? I think there's a fair assumption. Why would you assume that? I mean, why would you assume that everything she does is in the best interest of the company? Not necessarily. I mean, there's a presumption that the agent, when the agent is acting within the scope of her agency, is acting in the company's interests, I think, right? I mean, she may be a bad manager, right? And I think that's what Powell Industries and Holloway v. Skinner tell us. Holloway, you've got somebody who's being alleged of compelling the company to skip out on contractual obligations it had to the plaintiff, not paying royalties, not paying a promissory note. In Powell, you've got somebody who, the evidence indicates, might actually be taking money from the company for an improper purpose. Just look at the standard that Holloway announces, and it seems to me that you are sliding just a bit into evidence as opposed to in allegations, and that's to me the biggest question in this case. But Holloway says it must be shown that whoever the defendant is acted in a fashion so contrary, not necessarily setting up an independent business, not necessarily not doing managerial work, but those decisions that were made were so contrary to the best interest of whatever the company was that they were solely in the best interest of the defendant. Making those sort of determinations are largely evidentiary matters. We just need sufficient allegations, but you're saying there's sort of a bright line here, that if she was making managerial decisions, that in and of itself is somehow by definition, I think I'm being redundant, at least somewhat in the interest of the company because they are managerial decisions. Is that, to the extent you're understanding how I'm characterizing that, is that what you're saying? I don't know that I'm drawing that bright of a line. What I would hearken back to is one of the things that we haven't really discussed that Powell Industries v. Allen also makes clear is that this solely for one's own benefit can't be something that is just a furtherance of that person's relationship with the company. So solely in one's own interest doesn't mean if I get Mr. Denson out of the way or if I do these things I'm going to get a raise or I'm going to get a promotion. In other words, when the court talks, and Powell Industries v. Allen makes this clear, when the court talks about something being solely in one's own interest, that one's own interest means that it's divorced from the interests of the company. That's why I talk about embezzlement. That's why I talk about setting up a competitive business. If the company is benefiting in some way or is intended to benefit in some way by these actions, what happens is then you've acted not solely in your own interest. There's a mix, and in fact the court even talks about, Powell v. Industry borrows the rubric from sexual harassment or discrimination cases, pardon me, and uses a mixed motive. Right? You can't have a mixed motive. You can't plead, oh, yeah, well, she was doing these things as a manager for the company and she was running the terminal and doing this, but she was also trying to make it a better place for her or she was also trying to make it more likely that she'd get promoted and get Mr. Denson out of the way as a possible rival. One way I interpret these allegations is that Monte Mayor could not have cared less of whether these hours and firings were in the best interest of the company. If that's all it's alleging, you're saying that's not enough? That she doesn't care if it helps the company or not? She's only caring about getting the kinds of people around her that she wanted and getting rid of the people she didn't want? That's not enough, you're saying? I'm not sure that I understand. Well, you're saying it has to be against the best interest of the company in order to be solely in the best interest of the defendant, and it seems to me at least these allegations are saying she was acting without regard to the interests of the company and was only trying to benefit her own personal desires. Would that be a sufficient allegation in your mind? I don't know that it would, Your Honor, and here's why. I mean, think about what the possibility would be if that were the case. Think about if we could bring a tortious interference claim against a manager who did a poor job. Bring a what? I'm sorry? I didn't understand what you said. Oh, sorry, no. I was going to say, so to me, the possible impact of that, so if you have a manager who is subject or every agent of a company who's in a managerial or leadership role is subject to a tortious interference claim for making bad decisions, for making, you know, I mean, think about how many managers out there, how many leaders out there that do just a really poor job. They don't really act in what most people would argue are the best interests of the company. Right? But if they're not doing that in a way that is so completely outside of the company's interests, and again, the court talks about it, it can't just be a bad job or she's a poor manager or she's a discriminatory manager. It has to be so clearly outside the company's interests that a rational person would look at it and say clearly she's only looking out for herself. And again, the Texas Supreme Court has said that looking out for herself does not include trying to further or better her own position within the company. It has to be something that's separated from that company's interests. So I would argue, I think the Texas Supreme Court has set something close to a bright line rule that if she's engaging in these duties, if she's engaging in these managerial type duties in such a way that she's, you know, that she's doing something for the company and that it's not solely in her own interest, then you haven't stated a claim. I mean, and if you look at what Mr. Denson's pleadings say, I think we quote from them at pages 17 and 18 of our brief. What he talks about is she favored this type of employee on the job. She hired this type of employee to do these jobs. She assigned routes to these particular type of drivers. All of these, this alleged malfeasance is stuff that was done in the course and scope of her running the warehouse for the company. Now, I get she may have done a poor job of that by their allegations. She may have even done a discriminatory job of that by their allegations. But I think Texas law is pretty clear that at some point, you know, if she's doing something that's nominally in the company's interests, then you can't look at it and say, well, this was solely in her own interests. Right? Talk about the ratification point the district court made. Thank you, Your Honor. Yeah. One of the things that Powell Industries v. Allen does talk about, and this is where I think we get into this whole looking at the evidence, piercing the pleadings thing that Mr. Denson's counsel brought up. Powell Industries says that if the company, if the principal does not complain of or oppose the agent's actions, that as a matter of law, the party can't recover against the agent for tortious interference. So although I understand what Mr. Denson's counsel says about this being an affirmative defense, it seems to me that the Texas Supreme Court has made it into something of an element that has to be proved. Right? It has to be proved by the plaintiff in the case that, at least has to be pled by the plaintiff in the case, that if the principal didn't protest, didn't oppose, didn't complain of what the agent did, then there can't be an agent acting so far, or acting against the company's best interest so far that it can at least be said that she was acting in her own interest. This wasn't pled. Was it proper for the judge to consider that? I think it was under Smallwood, Your Honor. One of the things that Smallwood tells us is that if there is something missing from the pleadings, a potentially dispositive fact that's missing from the pleadings in the case, it's proper for the court to look a little bit beyond the pleadings. Now, we know Mr. Denson's counsel referred to the fact there was a fairly substantial delay between the time this case was removed and the time that it was remanded, or that it was moved for remand. So there was full discovery conducted by BVEX. There were depositions taken by BVEX. And one of the things that we learned in the course of that was that Mr. Denson stated that Ms. Montemayor was misbehaving. This happened a few weeks before his termination and, again, a couple of weeks after his termination. The first time he writes a letter complaining to the company, the company sees it and doesn't do anything, doesn't do anything to stop Ms. Montemayor, is absolutely fine with what Ms. Montemayor did. There's testimony in there that the company approved of what she did. And then after Mr. Denson was terminated, he went back and wrote another letter, and, again, there's testimony in the record that shows that the company approved of what she did in terminating his employment. So because of the fact that Powell says that we have to have that, or that the plaintiff has to plead and show that element of the company opposing the action, that was missing from the pleadings. It's not there in the pleadings. I think it was right for Judge Miller to have looked at the available evidence, which was there in the record, and said, well, not only, and I think his exact quote was, not only have you not pled this, but you can't show it, or you can't prove it. Was Powell Industries a pleadings case, or did that get further procedurally? It went further procedurally, Your Honor. I believe that was a summary judgment case, but I can't recall off the top of my head. Do you have any more questions? I've got less than a minute, so I was going to move forward. One other point that I wanted to make clear, and it's one of the reasons that I submitted Ackerblom, Mr. Denson's counsel has raised on a number of occasions this idea that jurisdiction was somehow defeated because Bevex and Ms. Montemayor did not affirmatively file a 12B6 motion to go along with their notice of removal. I think the case law makes that fairly clear. Ackerblom makes clear that when a judge is faced with this sort of situation, the judge under Federal Rule 21 has an inherent power to remove a party from misjoinder. There's nothing, I've not seen a single case where it says that in addition to noticing the removal of a case, a party also has to file a separate Rule 12B6 motion. The improper joinder analysis under Smallwood is a quasi-12B6 analysis to begin with, and the Court has consistently held that when somebody is deemed to be improperly joined, they're considered to be removed from the case and their citizenship is ignored. So with that, my time has ended. Thank you very much, Your Honor. Unless you all have any questions for me. Thank you, Mr. Medina. Okay, back to you, Mr. Walker. Let me start with Ackerblom. First of all, the rule is the judge looks at the pleadings at the time of removal. Secondly, the judge considers all in the best interest, all in the interest of plaintiff and inference to plaintiff. And by the way, I want to get, my co-counsel is helping me think through that question you earlier asked, Judge Southwick. But in Ackerblom, it doesn't say, well, we can get facts from the defendant. We can take facts from the defendant. Ackerblom says, and while it's not as in bold black letter law, it says that if there is a requirement for additional inquiry, the judge can look at that except for where it presents new claims. That's very clear. It's talking about looking at the plaintiff's, looking at the plaintiff's arguments for why there is no jurisdiction. Now, in this particular case. Let me ask you, Ackerblom holds what states it may not be a holding. Ackerblom contends the district court should have pierced the pleadings to consider his earlier referenced affidavit filed in support of a man. It is rarely appropriate, however, to pierce. And if you do pierce, it's only when a defendant can point to undisputed facts that would preclude a plaintiff's recovery. And that seems to me what we're talking about here, maybe again improperly applied, but Ackerblom would allow Judge Miller to look at this ratification point, it seems to me, in support for it. My point is that the judge strayed from looking at our petition and embraced all the things that counsel has said to you would stray from the issue that he's added in the motion for summary judgment. And by the way, when there was a delay in the court entering a ruling on the motion to remand, we filed a motion for leave to amend, a very detailed amendment, hoping that that would satisfy an inquiry as to what the facts really were. It didn't add any new causes of action. But the judge decided not to consider that. Another point that I'm not sure I got, Ackerblom, but let me go to another point right quick that counsel says that, and I want you to pay close attention to what he just did say. He said that I've got to prove that there was an independent action by Montemayor and that it was not ratified by the defendants and that here the defendant ratified it. But he gave you the timing on that. The timing is very important. He said there was a letter two weeks before Denson. Denson wrote a letter two weeks before he was fired, and then he wrote a letter two weeks after he was fired. Now, counsel says that, well, Mr. Watts says that Denson was fired by Montemayor. True enough, I did at the end because she wrote the letter, which she didn't have authority to write. But I also state at the very beginning that it was for her own personal and malicious reasons without proper and being negligently supervised by BVECs. That's not a cause of action against BVECs. That's simply saying they weren't watching. Now, when did BVECs decide to approve? And by the way, if we were in court, I could probably prove to you or to some jury where Montemayor is today. Conveniences occur. But the point is that that's not of the record. But the point is that in this particular case, we have Montemayor, an employee without authorization, writing a letter to terminate. He says, well, after the fact, after we got Denson's letter and said, oops, well, we're going to have to stand by Montemayor because if it comes to court, we'd rather be in federal court than state court. And so that, I think, is what happened. But all of the facts that occurred up to the time of the termination and all of the facts that are necessary to prove a cause of action were pled by me. If he wants to say that there was authority, that there was ratification after the fact, ratification of her action, then that's a defense maybe. And if he wants to say that my guy was a bad worker and that she pointed that out, that may be justification, but that's a defense. If he wants to say that his client was guilty of malfeasance, and he represents both, if he wants to say that his client was guilty of malfeasance, I would agree. But I would say that the reason she was guilty of malfeasance, like I said in page 28 in our brief, is that Montemayor expressed her animosity toward Denson, openly racist and sexist, displayed favoritism towards Hispanic females, hired her lover and other Hispanic females who were incompetent, not qualified, and allowed them to perform services against mandatory policies and procedures, and that this resulted in incidents including the theft of multiple bank bags, complaints from banks, and even resulted in DVECs being placed on probation with Chase. That's what the case is all about. And all of the business that they're coming up with is simply to try to forum shop because they find or think they find a more favorable forum in federal court than they do in state court. You have a red light, Mr. Washington. I'm sorry. Thank you very much. I appreciate your time and attention to this today. I hope Judge Higginbotham as well. We have your case, and that completes the docket for the morning, and we'll be in recess until 9 o'clock tomorrow morning.